**NOT PRECEDENTIAL**

**UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

No. 14-4739

MUKHTAR MUHAMMAD,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
Agency No.: A089-559-585
Immigration Judge: Honorable Steven A. Morley

Submitted on November 13, 2015

Before: CHAGARES, RENDELL, and BARRY, <u>Circuit Judges</u>

(Opinion filed: April 4, 2016)

**RENDELL**, <u>Circuit Judge</u>:

Mukhtar Muhammad ("Muhammad"), a native and citizen of Pakistan, petitions for review of the decision of the Board of Immigration Appeals ("BIA") to deny his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We will deny the petition for review.

## I. Factual Background

Muhammad entered the United States on a non-immigrant C-1 visa on November 7, 2006, and was authorized to remain in the United States until December 6, 2006. In October 2007, Muhammad filed an application for asylum, withholding of removal, and CAT protection. In August 2008, the Department of Homeland Security commenced removal proceedings against Muhammad, charging him with overstaying his visa. Muhammad has conceded that he overstayed his visa but continues to seek relief from removal through his applications for asylum, withholding of removal, and CAT protection.

Muhammad contends that he was persecuted because of his participation with the Tehreek-e-Insaf political party ("PTI") and his moderate Islamic religious beliefs. During his hearing before the Immigration Judge ("IJ"), Muhammad explained that as a member of PTI his responsibilities included participating in demonstrations and elections and

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

putting up posters. Muhammad stated that during one PTI demonstration on September 1, 2006, Pakistani police appeared and began beating demonstrators, including Muhammad, with sticks. Muhammad claimed that he was arrested and detained for six days following this incident. Additionally, Muhammad asserted that he was hospitalized for five days as a result of this incident.

Muhammad also described an incident involving the Taliban. While at his mosque, members of the Taliban appeared and began instructing individuals to remove photographs and television sets from their homes. Muhammad stated that he, along with his friend Rashid, who also belonged to the PTI party, verbally challenged the members of the Taliban on their beliefs. Muhammad claimed that the Taliban members stated, "if you know what's good for you, you would do what we tell you." A.R. 198. Muhammad testified that on a Sunday night following that incident, five masked men were looking for him at his home, but he was not there. Muhammad further testified that these men went to his friend Rashid's home, took him away, and murdered him. Muhammad then claimed that the Taliban came to his home two additional times looking for him.

Muhammad expressed his fear that if he returned to Pakistan he would be in danger as the Taliban are still looking for him. Muhammad testified that his wife and children, who have remained in Pakistan, have told him that the Taliban continue to seek him out and threaten him. When questioned about his failure to corroborate any specific ongoing threats about the present conditions in Pakistan, Muhammad claimed that his wife could not send a letter as she cannot read or write and that his children did not

3

provide any statements as they did not know what Muhammad needed to support his case.

## II. Decisions of the IJ and BIA

The IJ first recognized that a threshold credibility determination must be made when considering asylum applications and concluded that Muhammad's testimony was not credible. The IJ noted some discrepancies in Muhammad's testimony, including discrepancies between dates given by Muhammad in testimony and dates on documentary evidence. The IJ found Muhammad's testimony concerning one of these discrepancies—namely, the date on which he received a visa to travel to the United States—to be "vague." A.R. 138. The IJ also based his adverse credibility determination on Muhammad's "evasive" testimony regarding the reason he is no longer an active PTI member while in the United States. *See* A.R. 141.

The IJ also noted that Muhammad had failed to corroborate certain aspects of his testimony that should reasonably have been corroborated. For example, the IJ found that Muhammad failed to substantiate his testimony that the Taliban were still looking for him and asking about him. The IJ noted that there are individuals who could have corroborated Muhammad's claim, such as his wife and children in Pakistan, and the IJ did not find Muhammad's explanation for his lack of corroboration to be plausible. Further, the IJ determined that Muhammad failed to corroborate that the Taliban target low-level members of political parties and that there is a reasonable basis to fear the consequences from the Taliban incident that occurred nearly five years before the merits hearing.

4

The IJ held in the alternative that even if Muhammad's testimony were credible and the IJ were able to find that Muhammad had suffered past persecution, Muhammad would not be entitled to relief because the government had rebutted the presumption that Muhammad had a well-founded fear of persecution. The IJ found that, because of changes in the Pakistani government, Muhammad's participation in the PTI was no longer a likely source of persecution. As for the threat of persecution from the Taliban, the IJ noted that Muhammad's family was safely living in Pakistan and there was no corroborated evidence that the Taliban were continuing to threaten or look for Muhammad.[1] Nor was there evidence in the record that the Taliban would target an individual like Muhammad who was not a political or community leader.

The IJ also determined that Muhammad could internally relocate within Pakistan, noting that Taliban control is not pervasive throughout the country but limited to certain areas. Specifically, the IJ found that Muhammad could relocate to Karachi, Pakistan—the city where Muhammad had been employed as a seaman and where his family retreated upon his flight to the United States. Thus, the IJ denied Muhammad's application for asylum relief.

The IJ also denied Muhammad's applications for withholding from removal and CAT relief. The IJ concluded that, because Muhammad had failed to establish eligibility for asylum, he likewise had failed to establish eligibility for withholding from removal, which has a higher burden of proof. The IJ concluded that Muhammad failed to establish

---

[1] The IJ also found that the threat allegedly made by the Taliban to Muhammad would not rise to the level of persecution. We need not address this finding.

eligibility for CAT relief because he had not shown that the Pakistani government would be willfully blind to, and thereby acquiescent in, any torture inflicted on Muhammad by the Taliban.

The BIA affirmed the IJ's rulings, substantially adopting the IJ's reasoning and finding that the IJ's determinations were not clearly erroneous.

### III. Jurisdiction and Standard of Review

We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review a final order of removal. When the BIA substantially adopts the findings of the IJ, as the Board did here, we review both decisions. *He Chun Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004). We review factual findings, including adverse credibility determinations, under the substantial evidence standard. *Butt v. Gonzales*, 429 F.3d 430, 433 (3d. Cir. 2005). Substantial evidence is lacking where the evidence "was so compelling that no reasonable factfinder could fail to find" the alien eligible for relief. *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).

### IV. Analysis

An applicant seeking asylum bears the burden of demonstrating eligibility for relief as a "refugee" by establishing that he "is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of [a country of his or her nationality] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). An applicant who has proved past persecution is entitled to a rebuttable presumption that he has a well-founded fear of persecution, but relief will not

be granted if the government is able to rebut that presumption by showing either that "there has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution" or that "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country of nationality." 8 C.F.R. § 1208.13(b)(1)(i). To establish asylum based solely on a well-founded fear of future persecution, the applicant must show both that he subjectively fears persecution and that his fear is objectively reasonable. *Valdiviezo-Galdamez v. Attorney Gen. of U.S.*, 663 F.3d 582, 590-91 (3d Cir. 2011). However, "[a]n applicant does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality." 8 C.F.R. § 1208.13(b)(2)(ii).

We find that there is substantial evidence to support the findings of the IJ. Although we agree with Muhammad that the inconsistencies in his testimony could be considered trifling, *see* A.R. at 139-41 (noting inconsistencies in Muhammad's testimony concerning when he obtained his visa, the date of the murder of Rashid, and whether Muhammad's political party had a formal organization in the United States), the IJ based his credibility finding on more than just these discrepancies alone. The IJ also noted Muhammad's demeanor, which he found, at certain points, to be "evasive" and "vague," *see* A.R. at 3, and noted that Muhammad, without adequate explanation, had failed to provide corroborating evidence that it would have been reasonable to expect him to provide. *See* A.R. 142-45. Given our highly deferential standard of review, we cannot conclude that either the IJ's credibility determination or the IJ's ultimate determination that Muhammad failed to meet his burden of proof lacks support in the record. *See* 8

U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."); *cf. Abdulrahman v. Ashcroft*, 330 F.3d 587, 597 (3d Cir. 2003).

Moreover, we agree with the BIA that there is sufficient support for the IJ's alternative finding that the government rebutted any presumption of Muhammad's well-founded fear of persecution. The IJ pointed to evidence in the record showing that changes in the Pakistani government had mitigated the likelihood of persecution based on Muhammad's political involvement. The IJ also pointed to evidence showing that Muhammad's family has been living safely in Pakistan for several years and noted the lack of corroboration for any continuing threats against Muhammad from the Taliban. *Cf. Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir. 2001) ("[T]he BIA may sometimes require otherwise-credible applicants to supply corroborating evidence in order to meet their burden of proof."). This evidence, along with further evidence concerning conditions in Pakistan, also supports the finding by the IJ that Muhammad could avail himself of internal relocation within Pakistan.

Finally, for essentially the reasons given by the IJ and adopted by the BIA, we find that substantial evidence supports the IJ's denial of withholding of removal and of CAT relief.

## V. Conclusion

For the foregoing reasons, we will deny Muhammad's petition for review.

8